Good morning, Your Honors. I'm David Miller from the firm of King & Grice, and with me in court today is Mr. Day Williams, who is co-counsel and Nevada counsel. I don't intend to go through 16 years of history, but I think the question of how we got to where we are today bears directly on the question of the three issues on appeal. If the Court will remember, during the first six years, there were two serial appeals where the District Court granted motions to dismiss, which were reversed by this Court in Mishler's 1 and 2. I know none of the panel members were on those, but nonetheless, the case came back when the District Court held, when the Ninth Circuit, excuse me, held that there was a constitutional right to a timely response to a license verification request. We seem to have gotten off point in this proceeding, because in this summary judgment motion that was granted, the Court appears to have turned the case on its head and required Dr. Mishler to prove more than that there was not a timely response to a license verification request. Doesn't this appeal turn principally on whether there's enough evidence to show personal participation by the board members? Certainly, that's one important question under Taylor v. List. Absolutely. There has to be personal participation. But personal participation in this particular circumstance doesn't mean that the individuals did a wrong act. It could be satisfied, Judge Reimer, by the individuals knowing that there's a requirement, being subject to the requirement, and doing nothing about the requirement. Yes. That would be true and is true. I understand. Now, the question is, did they? Yes. Because as I read the evidence, the evidence says that the board got and knew about the request for clearance. Let us suppose that the members also knew about the request for a clearance because their answers to interrogatory said they did. Beyond that, though, there is no evidence that the members of the board, except for Clift, starting in September, knew anything at all about the response made by Lewis orally or, in fact, in writing. Well, I think that raises a central key issue, is what's the responsibility of these board members? Well, but that's a different question, right? Well, no. I think those two go together, Your Honor. And let me try to explain why I believe they go together. The bottom line is that for 14 weeks, none of these board members did anything. Now, in their affidavits, which were filed in support of the motion for summary judgment, they affirmatively said, we do not know anything and did not know anything about Dr. Mishler and his request. So if that's true, then are you saying that they're they can be held liable under 1983 for failing to initiate well, failing affirmatively to be sure that something happened? I'm saying what this Court said back in 1993, that they violated a ministerial duty to respond timely. Well, the board no doubt did that, but that's not where we're at here. I'm just trying to figure out your theory for individual liability under 1983 for people who don't know anything. But, Your Honor, they did know something. And what they did know is what they later said and denied that they knew. They knew that a request had come in. Correct. They knew it was their duty to timely and quickly respond. An individual board member violated the Constitution by fill-in-the-blank. By not timely and quickly responding. We're seeing to it as supervisors that whoever was employed to do so at the board did so. And that's called supervisor liability and applies in Section 1983 cases. But that's affirmatively checking, right? So the board member now violates the Federal Constitution by failing affirmatively to check up on the person who's responsible for running the show? No. By failing to affirmatively fulfill his or her constitutional duty to timely and parenthetically accurately, as opposed to what we know happened, respond to a license verification request. Then what is your best case for saying that a board member has that Federal constitutional duty? Probably Taylor v. List at 880 FedSecond, Your Honor. It's the entire body. And by citing to that in the briefs, we've cited the court to the entire theory of supervisor liability. Think of an example, a hypothetical case, where a board decides to make itself ignorant of everything. It just says, I don't want to know anything. We understand that we've got these requests that are coming in. We understand that it's our duty to respond, but we don't want to know anything about this. Then under the theory, under that hypothetical, a board and individuals who have affirmative duties under the laws of a particular State to respond, as this Court has said it, that board had a duty to respond, could simply decide not to learn anything. I don't want any reports. I don't want anything. We need any information from the board. Remember what the affidavits said. They didn't say what is being posited now by the court. They didn't say, we've got, we as members of the board. Are you speaking of the Booth affidavit? No. I'm talking about the affidavits from all of the defendants, except Dr. Cliff. From the individual defendants. Well, that's correct. All right. Except Dr. Cliff. Thank you. The ones that were filed as support for their motion for summary judgment, they were all the same. They were, they set out all the same statements. And what they said is, I didn't know about Dr. Mishler. I didn't know about his request for a license verification. They did not say, it's our standard practice to have the board employee take care of this, and we assumed she was taking care of it, and we never heard that she didn't take care of it. None of them say that if you read these affidavits carefully. They simply say, we didn't know anything about it. We've put ourselves in a position of ignorance and are therefore not liable. But it's simply not true. If you read, you know, one of the good things about this case having gone on, if there is a good thing at all, is that in 1997, they admitted directly that they admitted receiving an inquiry from the Board of Medical Examiners of Ohio in an Ohio hospital in about May of 1985. Yes. So, I mean, I guess I'm still just struggling to figure out. There's no question they knew about that. I mean, the board knew it and the members knew it. But where is the constitutional duty on the part of the board members to, what is it they're supposed to call the executive secretary weekly, monthly, daily, at their next meeting? Are they supposed to inquire about it, say, have you responded yet? What's the state of this thing? And they may get hundreds of these requests, or they may not. I don't know. But is that what their constitutional duty is? Their duty as board members is to see it, see to it that those requests are timely and accurately responded to. Well, yes. But are they supposed to do that before their next meeting or at their next meeting? As the record shows, there were monthly meetings. And as the affidavit from Ms. Bailey shows, there were monthly meetings. And these things, if there were problems at all, were handled within the month if there was an issue at all. It wasn't the only evidence, the fact of their admission in request for admission number 11, that they had something to do with this. Ms. Lewis's own statements showed their motivation. Now, quite frankly, the brief harp on this, the plaintiff's appellant's brief harps on this issue of the lies from the board employee, Ms. Lewis, when she called up Ohio and stated that there had been a proceeding at which Dr. Mishler's own expert had admitted malpractice, these were confabulations. This was just not something that had ever happened. As the Court knows, the disciplinary action didn't occur until 15 months later, and then was overturned in 1993 by the Nevada Supreme Court. So none of those things happened. But if we believe, as I think at this point in summary judgment, we have to, Ms. Booth's affidavit, and I don't know if it's true at all in its opinion, if we believe her affidavit, then, in fact, she was referring to the board's intent, effectively, to interfere with Dr. Mishler's license. That's what the affidavit concerns. But she had a way of knowing what the board intended. I mean, she knows what she was told by Lewis, and Lewis made all this stuff up. So that's what Booth's affidavit says, basically. What the Booth affidavit says is that Ms. Lewis indicated to her the board members, the members of the board were trying to revoke Dr. Mishler's license. Look, there's also no question that they were trying to revoke his license. I'm just trying to see where the nexus is. Sure, they were trying to revoke his license, but do those members individually bear responsibility for the communication to Ohio? I mean, that's what this is all about. Here's what I think is the answer to that and where I think the argument of Dr. Cliff goes wrong. Dr. Cliff argues, look, I became the head position at the board at the end of August. And so I took it upon myself. He doesn't say why. I took it upon myself after learning about this, which everybody else says they already knew about for 14 weeks, to write a response. It's too little, too late. The bottom line is that that response should have been sent back in June of that year, not in September of that year, when the relationship with the Ohio hospital, where there was a contract with Dr. Mishler, had already been rescinded. His last hope had therefore expired. The board members. Let me ask you a question. Didn't the letter that this doctor wrote to Ohio allude to the difficulties that Dr. Mishler was having with the Nevada board? Absolutely, Your Honor. What it said was that the board was in the process of, I believe it said, investigating a disciplinary matter. The form that was sent by Ohio was a very simple one. It said, please respond as soon as possible because licensure is involved. It had spaces for are there current or pending matters concerning discipline and for comments. The response that, in fact, Dr. Cliff believed he was responsible, in answer to your question, for sending out. He sent out not a month later or not six or eight weeks later, as the Booth affidavit and the Peters affidavit would indicate would have been within the time frame, but some 14 weeks later. The fact that he took the responsibility to do that shows that it wasn't the obligation of the board employees. It was the obligation of one of the board members and the business of the board members. If, in fact, what had happened was that Kathleen Lewis would have sent out that 14-week-old written response, what was required, I could understand an analysis which would say the board members don't have anything to do with this process. But, in fact, the board members specifically were involved with that process, and it's what this Court said in 93 they were required to do. If I may briefly touch on the issue of discovery and Kathleen Lewis. If you read the original complaint, there is no allegation known to the plaintiff that Ms. Lewis was involved in this behavior. As the Court said literally in 1997, after this Court then in Mishler III addressed the question of whether the complaint could be amended, in 1997, this Court in Mishler III said yes, it related back, and the complaint could be amended. My firm entered its appearance. And we immediately tried to add in Ms. Lewis at the time and within the time the Court had said parties could be joined. And it wasn't until discovery started that there was any indication or knowledge that Ms. Lewis would have been a proper defendant. Now, that's bizarre, 10 years into a case. What we argued ---- There have been discovery, a lot of discovery prior to that 10 years? No, Your Honor. No discovery? The Court said that there had effectively been no discovery, and that's in the Court's order concerning the amendment of the complaint back in 97. Now, if the Court remembers the third issue, so as unusual it is, we believe that Ms. Lewis should have been allowed to have been joined. The point ---- Didn't Dr. Mishler's wife have conversations with Ms. Lewis about getting the clearance many times? She had many conversations with members of the Board. I'm not prepared to state that the record says it was only with Ms. Lewis. I believe it was with others also at the Board. But was Ms. Lewis involved? Absolutely. I mean involved in the conversations. You know that. If you don't, don't worry. I apologize. I believe she was, but the record ---- it's been referred to in the briefs. I apologize for not knowing offhand. Which raises a question of why Ms. Lewis wasn't added as a defendant from the beginning. Well, if, Judge Nelson, you read what was known about the original circumstances involving the complaint, it was simply that the Board had not responded. There was no information that had been disclosed that, in fact, it was the duty of Ms. Lewis to respond. The bottom line was that there had been no response, and the attorney at the time picked the individuals who were on the Board at that time, and I think appropriately so. Has the statute of limitations run on the claims with respect to adding Ms. Lewis? Do you know what? I think that issue goes to the question of whether there's prejudice and whether there was knowledge. And the bottom line is, and it's why we argued strongly in the motion to amend, that there had been an indemnification issued by the State with respect to Ms. Lewis. What we were getting at was to show the Court that there was no prejudice by adding her. That was the bottom line. The question of whether or not she knew about the allegations in the complaint is simply one, I think, as a fact finder would have to decide. But lastly, how does your motion to add her meet the requirements of Rule, Federal Rule 15C? Well, and I repeat what I just said with respect to the fact that she was, we believe she was on notice, and, in fact, there's absolutely no prejudice whatsoever. And finally, with respect to the discovery, can I state that I'd have different record to argue to you if the discovery had been allowed? Perhaps. But the bottom line is there was a timely motion filed a month before the end of discovery to extend that date. Had it been ruled on, then perhaps all of those depositions could have been fit in. But the bottom line was that counsel was only asking the Court to extend by a short, a brief period of time for two depositions to occur, Dr. Clift's and Ms. Lewis's, if I remember. I believe that that prejudiced the plaintiff in responding to the motion for summary judgment. A Rule 56F response wouldn't have done since the Court had already ordered that there was not going to be any more discovery in supporting the magistrate's opinion. I'd like to keep my rest of my time for rebuttal. I just want one question. Are the board members here individually or in their official position? Is this a case against the board individually, personal liability? Under the Eleventh Amendment, Your Honor, it can only be for individual liability, yes. All right. Mr. Quinn. Your Honor, I'm going to take up ten minutes and then allow Ms. Barnhart to take ten minutes. Judge Bright, Allison, Judge Reimer, I represent seven of the board members. Another board member that I used to represent has since deceased, since this case was filed. And the ninth board member is represented by Ms. Barnhart. I'm going to focus primarily on answering any questions the Court has on the issue of the summary judgment and also on the addition of Kathleen Lewis. Since it was most recently addressed, I'd turn to that issue first. Counsel for the plaintiff admits, Judge Reimer, that the Nevada law controls on the issue of whether the application of the two-year statute of limitations would preclude addition of Ms. Lewis, and it does. It's a two-year statute of limitations. So the complaint was filed in April. Well, it doesn't, I suppose, if it relates back. Does it? For the addition of a new note. So it doesn't relate back. It does not relate back. For her. This is the statute of limitations. So the complaint was filed in April of 87. The attempt to add was in July of 97, ten years plus. 15C is the only rule that does apply, and there is no evidence that Kathleen Lewis had any notice of this proceeding, other than the fact that during the course of litigation, she was apparently prevailed upon by prior counsel to file an affidavit, which was done in 1994. So the only evidence in the record at all would be her affidavit. I don't know any reason why there should be any inference drawn that she does know. The individuals sued were board members. As far as board member responsibility to handle the ministerial functions of the board office, the court should know that this is an executive administrative board appointed by the governor consisting of nine people, six doctors, three lay people. They meet quarterly. There's nothing in the record to my knowledge, I recall, nothing in the record saying how often they meet. Monthly, as was insinuated. The fact is they meet quarterly. That's not in the record either, but they don't meet monthly. I don't think that's in the record. The way they do function is they function as a public body, and they function pursuant to the open meeting law. The only time they can take action is by public notice as a board. That's the only way they can take action. They do not respond. They have a staff. The board members do not respond to these ministerial actions. I'm going to follow my own sword. I was the brand-new lawyer in the case when I prepared that answer to the request for admission with respect to receipt of notice. What happened there is that the admission requested some other information. I can't remember exactly what the request was. It requested this information. The answer was, oh, it requested, do you admit that you knew Dr. Mishra was moving? I don't know if he was moving to Ohio. I don't know whether at this time the board, under the 11th Amendment, as an official body, had been dropped. I can't recall, but if it had, it was right about that time. Similarly, whether the board members in their official capacity, I don't know whether they'd been dropped officially. The request for admission was addressed to everybody. It was addressed to the board as well as the individual defendants. I just came on the case. The case was massive at that point in time. I filled out and prepared the answer to admission wherein. I said the board, the defendants, all of them collectively deny having any knowledge that Dr. Mishra intended to move to Ohio. But in good faith, I added that the board members admit only, because this is all the board collectively, anybody knew, was that Ohio had sent a clearance. That's all that the board members, so I added that the defendants, and I made a collective defendants. And that was erroneous, because it is not so that the individuals, but that's where it is. That's the sole scintilla of evidence indicating any knowledge or participation. Assuming that they individually did know. It's assuming. That they individually did know, then why is there no responsibility? There is no responsibility, because the knowledge that there was an inquiry does not prove that they had, as the court said, that they had any knowledge or participation in the content or the timing of the response. Or, and there's nothing nowhere, is there any record or law or procedure or anything that imposes upon them an affirmative duty to do that response? About their knowledge, doesn't this create a tribal issue of fact? No, no. With respect to their credibility? No, no. The fact that they're, because, no. The case cited, Wallace, I think, is the case, doesn't stand for the proposition that creating a issue with respect to credibility of a testimony, of a witness who provides affidavit testimony, is, negates the effect of that affidavit. That's not the holding. The holding of that, that was, the holding of that case was that summary judgment was reversed because the issue was probable cause, which, at the bottom line, is always a question of fact. It was just an observation in there that the doctor said one thing in an affidavit was motivated that, I think, psychologist to come to this conclusion at one point in time, and then the psychologist said in a later affidavit, there's another thing that motivated me, and the two things were crosswise. That's not the case here at all in any event. The only thing that doctors can be held to have admitted is knowledge that the board received the clearance. The receipt of the clearance alone, it can't, in no way, gives rise to any kind of a cause of action. They have received information that Dr. Mishler is moving. That's the only fact that you could possibly attach to them, knowledge that Dr. Mishler has applied for a license in Ohio. There's, the record is, in the words of the district court, utterly devoid of evidence that they knew and failed to prevent what Kathleen Lewis did in response. These are, you know, it may seem incredulous, but board members are doctors who are practicing, and for the most part, most of them are in Las Vegas, which is, you know, eight hours by car and so forth. I mean, this isn't Los Angeles and Beverly Hills. Are the board members compensated for anything other than expenses? No, I don't think so, Your Honor. No. They work pretty much as. They're volunteers. They work, they're appointed by the governor, they have very important responsibilities, but they're doing it as professionals. Yes, and I'd like to add. How about the layperson, same thing? Same thing. I'd like to add one thing. Contrary to what Mr. Miller suggested, there is an affirmative, where did I make that note? There is an affirmative, an affirmative effort. Come on, where is it? An affirmative effort to maintain ignorance. And the reason is that the board members ultimately are the adjudicators of cases. So the procedure in disciplinary matters is the board members are insulated and do not know about what's going on with respect to a doctor, because ultimately they're going to be sitting as triers of fact. And that's the not prejudice then. And so there is an affirmative effort, contrary to the suggestion that it's wrong to do this. That's, in fact, what's done. They are insulated from the. Plus, now, taking my thought as a practical matter, most of them are in Vegas. Dr. Mishra was in Reno. They come to Reno quarterly for meetings. There's no interaction. There isn't a daily operation. And when the meetings are held, what the board members are in, their involvement is they're given all of the information pertinent to that meeting. And that's the end of it. What is their duty? With respect to respond? With respect to anything. If they have affirmatively try not to know anything. Their duty is to license, maintain standards for the practice of medicine, and to enforce the standards with respect to the practice of medicine. That's primarily what they do. That is primarily what they do. What happened in this case is a staff member receives an inquiry from a sister board in another state and responds accordingly. And a lot of that goes on. And my ten minutes are up. Okay. Thank you, Caroline. Then we'll hear from Ms. Barnard. Good morning. My name is Melissa Barnard, and I'm here on behalf of Dr. Robert Clift. And I'm going to take my ten minutes and focus primarily on the motion for summary judgment and the discovery issues that Mr. Miller alluded to. What I'd like the court to focus on with respect to Dr. Clift and the motion for summary judgment is his minimal time involvement in this case. And that time involvement is undisputed. He stated in his motion that he was appointed as Secretary of the Board in August of 1985. He first learned of the Ohio Inquiry in September of 1985. And in his capacity as Secretary of the Board, he responded to the Ohio Inquiry on September 4th. At the most, we're talking his knowledge from the time he learned to the time he responded. At the most, four days. Who was the Secretary before your doctor? It was Dr. Scholey. I don't recall his first name. Is there any affidavit or proof as to him as the Secretary that he knew or did anything special? Nothing has been submitted to my knowledge from Dr. Scholey. But your Dr. Clift was also on the Board before he became Secretary. Yes, he was. Okay. For Dr. Mishler to succeed on the motion for summary judgment with respect to Dr. Clift, he needs to bring evidence to dispute when Dr. Clift's knowledge, when he first became aware of the Ohio Inquiry. And then he needs to dispute that that response was not timely and not accurate. And I would submit that the evidence that Dr. Mishler brought forth in the motion for summary judgment and even on appeal does not create a material dispute of fact. Did you object at any time to this evidence on motion for summary judgment? You seem to make numerous claims that the evidence Dr. Mishler submitted in opposition to the motion for summary judgment was inadmissible. Did you object? I can't state for certain, but I do believe in our reply brief we might have made a statement that it was hearsay. In preparing for this argument and in reviewing the rules of evidence and the rules of civil procedure, what I would like to point out to you is that his evidence has to meet those requirements. Not only can it not be hearsay, but it can't be ---- It should meet those requirements, but my question was did you object at any time? I believe we did. I don't believe we emphasized it as much as we did on our briefs to this Court. I take it you were not the lawyer below. I was. And so I apologize for not knowing that right off the top of my head. I was working in conjunction with Mr. Poney, but I was the one who prepared the reply in the support of the motion for summary judgment. But what I want to point out is under Rule 56E, it has to be ---- any evidence that he's submitting has to be based on personal knowledge. It has to be ---- it cannot be opinion or hearsay testimony. And while it's not the same type of testimony that you would have at a trial, it has to still be admissible as if they were testifying at trial. If you look at the ---- If you have hearsay and there's no objection, it's admissible, isn't it? Well, it still would not meet the standard for a summary judgment motion if it wasn't based on personal knowledge. And many of the statements submitted in both Dr. and Mrs. Mishler's affidavits are not based on personal knowledge. It's something someone told them. Furthermore, even if ---- Well, wasn't the affidavits of the people from Ohio were ---- Didn't they have affidavits from those people in Ohio? They had one affidavit from Mindy Booth. And what I would like to draw the Court's attention to is this affidavit, even if admissible, does not mention Dr. Cliff by name. It does not have any specific facts showing that Dr. Cliff knew of the license inquiry before September, showing that he delayed, showing that his response was not accurate or timely. What did the affidavit say in its essence? Tell them to review that one. Mindy Booth's affidavit, the most problematic or damaging statement, if you want to call it that, would have been that she had talked to Kathleen Lewis and Ms. Lewis's statements to Ms. Booth indicated to Ms. Booth that the Board was trying or Board members were trying to revoke Dr. Mishler's license. Now, again, she does not say Dr. Cliff, but more importantly, that goes to the license revocation issue, not the license inquiry, the Ohio inquiry. It does not show an intent by Dr. Cliff to sit on the application and delay it to sit on the inquiry. The other affidavits also don't mention Dr. Cliff by name. The discovery responses that Dr. or excuse me, Mr. Miller discussed, those are distinct. Those were the state defendant's discovery responses. Dr. Cliff's discovery responses were different. So unless he can prove that there is a disputed fact as to Dr. Cliff's knowledge, it's hard for him to, one, claim that Dr. Cliff did not timely respond, but two, that Dr. Cliff should be held responsible for any delay in June and July. And that also goes to the comments from Ms. Lewis. The comments that we just discussed, Dr. Mishler finds them very objectionable, but he has not been able to link those comments to Dr. Cliff's conduct, Dr. Cliff's knowledge, or Dr. Cliff's intent. Dr. Cliff has stated he was unaware of those comments prior to learning about the Ohio inquiry. Ms. Lewis stated that no one told her to delay the application. You don't have direct knowledge of her comments. You don't have him directing her to make the comments to the board, him asking her to call the board, discuss the investigation. You don't have him having knowledge and acquiescing and doing nothing. There's no responding at superior liability. You can't have the supervisor liability, and therefore you can't impute these comments onto Dr. Cliff. I'd like to take the last couple minutes to discuss the discovery issue. I do join in Mr. Quinn's comments regarding the addition of Kathleen Lewis. That really wasn't an issue for Dr. Cliff, so I would just like to join in to those comments and get right to the discovery issue. And again, what I want the court to focus on is the due diligence of Dr. Mishler in seeking and conducting discovery, because that's the heart of the matter. The local rules say to get any type of extension on a discovery order or any other order, and it's local rule 26-4, you must show good cause. We argued in our briefs that good cause is defined as despite your due diligence, you could not reasonably meet the scheduled deadline. And I submit to you that Dr. Mishler did not conduct due diligence. He took no depositions in the entire history of this case. He didn't seek to conduct any depositions. While there was discovery, written discovery, for a six-month period of time, but after 2000 he didn't seek any further written discovery. He conceded at the hearing, and the transcript from the hearing with the magistrate is very informative, he conceded it was his responsibility if there was any misunderstanding. Perhaps maybe he's going to use the misunderstanding as an argument for why he did not conduct any due diligence or try and perform any discovery. But the misunderstanding, with all due respect, contradicts the clear language of the scheduling order, and it contradicts the historical facts and the conduct of the parties in this case. May I ask a question? Yes, sir. There is an affidavit in the record, as I understand it, from Ms. Lewis? Yes, that's correct. Did she say anything about whether the board participated or did board members participate or did not participate or had knowledge or said anything about the inquiry from the state of Ohio? I think the last paragraph of the affidavit states that the board, that no one instructed her to delay the application process. She said what? I believe the last paragraph of the affidavit states that no one on the board instructed her to delay. I thought you said one on the board. No, no one. So at least in an affidavit, she supports the position of the board, and if there was a deposition, there would have to be some kind of evidence to impeach that statement, I gather. I would assume so. And in the discovery, to extend the discovery, is a party obligated to at least state to the court what discovery will probably produce or what expects the discovery, even though the proponent doesn't really know? Correct. And at the hearing with the magistrate, he suggested about 12 depositions that he wanted to take, and that's what was before the magistrate when she made her ruling. One final comment on the due diligence issue. Since that is the focus and that is the inquiry under the Johnson case that was cited by the state defendants, once you determine there's been no due diligence, the inquiry stops. There's no issue as to whether we would be prejudiced by the additional discovery. Thank you. Thank you. Mr. Miller. Thank you, Your Honors. I'd like to clear up a couple of matters. First of all, Mr. Quinn said these people who come to the board just come quarterly. I said they came monthly. I got that from the Bailey-Peters affidavit, which says, however, if it was determined that a problem existed, then the matter would be referred to the monthly meeting of the board of medical examiners. That's the record, volume 3, plaintiffs at page 723. So I believe that's just a misstatement from opposing counsel. They say that Ms. Lewis had no knowledge about this. This case was originally filed against the board as well. Remember, it was, I believe, Mishler 2 or 3, no, Mishler 2, decision in 1993, that said that there was a 11th Amendment immunity by the board. That's why, when I took over in 97, we dismissed the board. But the board, which Ms. Lewis was the head, secretary of, was sued originally. So to say that she had no knowledge of this back until 1994, or when she submitted her affidavit, I don't think is consistent with the record. The point was made that the board members simply do not respond to these kinds of license requests. Well, what did Dr. Clift do in September of 1985? He responded. He did exactly what the State now says he had no obligation to do. And why did he do it at all when Ms. Lewis said that she had been told? Remember the note to the file that's part of the record where Ms. Lewis says, I'm not supposed to, we're not supposed to respond until formal action is taken, which was simply contrary to what Ms. Booth, the Ohio person, said. Ms. Booth said you have to respond in writing. Well, Dr. Clift did that. Did he know about that? Was that the requirement for board members? Yes. It wasn't an obligation taken by the employee of the board. It's something he himself did. So it's not consistent with the argument that the board employee is supposed to respond. About the State's admission that they made a mistake, never until this argument has there been this fall on the sword thing. The bottom line is the defendants have never tried to correct that mistake in any pleading before the briefs and argument in this case. You are out of time. And I think we fully understand all the points. Thank you, Your Honor. Thank you, counsel, for your argument. The matter just argued will be submitted, and the court will stand at recession today.
judges: Bright, Dw Nelson, Rymer